1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN PEREZ and on behalf of all other similarly situated individuals,**<br><br>Plaintiff,<br><br>**LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1-50, inclusive,**<br><br>Defendants. | **CASE NO. 1:17-CV-00686-AWI-BAM**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

### I. Introduction

On April 13, 2017, Plaintiff John Perez ("Plaintiff") filed the instant wage and hour class action on behalf of himself and other similarly situated non-exempt, hourly unionized employees at the cheese processing plant operated by Defendants Leprino Foods Company and Leprino Foods Dairy Products Company (collectively "Leprino" or "Defendants") in East Lemoore, California (the "East Lemoore Plant"). Leprino removed the action to this Court on May 18, 2017. The action proceeds forward on Plaintiff's First Amended Complaint ("FAC"), filed on June 6, 2017, consisting of eight causes of action[1] for violations of the labor code, an Unfair

---

[1] The title page of Plaintiff's complaint lists ten causes of action. Two are omitted from the body of the complaint. Further, Plaintiff pleads two causes of action identified as Plaintiff's "seventh cause of action." FAC at 19, 22. The Court refers to the second of those two causes of action as the "eighth cause of action."

Business Practices Act claim, and a conversion claim. Doc. 10. Defendant filed an answer on June 19, 2017. Doc. 16.

Leprino moves for judgment on the pleadings regarding Plaintiff's first (failure to pay minimum wages), second (failure to compensate for all hours worked), third (failure to pay overtime wages), and eighth causes of action (conversion). Plaintiff opposes that motion. The matter is fully briefed.

For the following reasons, the Leprino's motion will be granted in part and denied in part.

## II. Background

A. Allegations of the Complaint

Plaintiff and the putative class members are all "non-exempt, hourly employees, who work pursuant to a Collective Bargaining Agreement ("CBA") between Leprino and the Teamsters Union." FAC at ¶ 4. Plaintiff attached the CBA to the complaint. FAC at ¶ 4; Doc 10-1 ("CBA").

The central factual allegation underlying Plaintiff's action is that Leprino has a practice of requiring Plaintiff and the putative class members to "work substantial amounts of time without pay." FAC at ¶ 3. Specifically, Leprino does not "pay Plaintiff and [the putative] [c]lass [m]embers for all required pre- and post-shift work activies that are necessary and integral to their overall employment responsibilities, such as: donning and doffing required sanitary gear [], walking to production lines, waiting in line to sanitize, and waiting for [sanitary gear] and/or supplies." FAC at ¶ 5. Plaintiff details the ordinary pre-shift activities of putative class members: When employees arrive at Lemoore East plant the must "first report to a 'clean locker' to be issued clean work shirts and trousers for the day…. From their clean lockers, workers must next walk over to their personnel lockers where they keep tools and required [person protective equipment], such a work boots and helmets. At their personnel lockers[,] workers changed out of their street clothes and into their sanitary work equipment. After putting on their required equipment, workers then punch in for their required shift, roughly 5 minutes before paid work time begins in order to allow them time to walk to their respective work areas." FAC at ¶ 7.

Next, Plaintiff sets forth allegations regarding three of Leprino's meal and rest break

1  policies. First, Plaintiff and putative class members were "required to remain on call during meal

2  and rest breaks and to respond to communications from supervisory personnel. Plaintiff and

3  [putative] [c]lass members are either required to carry a radio in order to communicate with

4  supervisory personnel concerning work issues during meal and rest breaks, and/or are required to

5  respond to calls over the intercom during meal and rest breaks, including returning to the

6  production floor prior to the conclusion of their meal and rest breaks." FAC at ¶ 10. This policy

7  applied to all putative class members. FAC at ¶ 10. Plaintiff alleges a second meal break policy

8  that applied to "many, though not all" putative class members—employees were "provided with

9  … paid, on duty meal breaks and thus were kept on duty during their 30 minute meal breaks."

10 FAC at ¶ 11. Finally, Plaintiff alleges a third meal break policy applicable to employees who

11 "worked … shifts in excess of ten hours." Those employees "were not afforded a second off-duty

12 30-minute meal period…. [R]ather, they were [nominally] afforded a third rest break." However,

13 during the third rest break, employees were required "to remain on duty and answer questions

14 from the production floor."

15 B. The Collective Bargaining Agreement[2]

16      The CBA between Leprino and Teamsters Local #517 ("Teamsters") is operative

17 between January 1, 2014 and December 31, 2018. The CBA is comprehensive; it covers topics

18 including hours of work, holidays, wage rates, meal periods, rest periods, sick leave, vacation,

19 and retirement, to name a few. *See* CBA at 2.

20 Leprino emphasizes the following sections of the CBA:

21      1.  The lowest hourly wage rate for any employee provided for in the CBA is $12.99. CBA

22          at 13, 43.

23      2.  "Employees who are required to change into and out of uniforms will … be paid a total

24          of 14 minutes of additional compensation for donning and doffing at the straight time

25

26 [2] The CBA was attached as an exhibit to Plaintiff's FAC. Plaintiff contends that the Court should not consider the
   CBA to be incorporated by reference because the Plaintiff does not "rel[y] upon the documents to form the basis for

27 a claim or part of a claim." Doc. 19 at 6 (quoting *Pittsburgh League of Young Voters Educ. Fund v. Port. Auth.*,
   2007 U.S. Dist. LEXIS 23626, *14-15 (W.D. Pa. Mar. 30, 2007). Plaintiff "attached [the CBA] for nothing more

28 than to substantiate for the [C]ourt that Plaintiff and the putative class members worked pursuant to a union
   contract." Doc. 19 at 6.

3

1    rate for each shift worked. This compensated time is not considered hours worked."

2    CBA at 14.

3    3.   "Time and one-half (1 ½) will be paid for all hours worked above eight (8) hours within

4      nine and one-half (9 ½) consecutive hours in any one (1) day, or forty (40) hours in any

5      one (1) week, whichever is greater…." CBA at 4.

6                    **III. Legal Standard**

7        Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings

8 "[a]fter the pleadings are closed—but early enough not to delay trial." "A motion for judgment

9 on the pleadings should be granted where it appears the moving party is entitled to judgment as a

10 matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir.2003). "Analysis under

11 Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a

12 court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff

13 to a legal remedy." *Pit River Tribe v. Bureau of Land Management*, 793 F.3d 1147, 1155 (9th

14 Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.2012)). Judgment on

15 the pleadings is appropriately granted in favor of a defendant when, even if all of the allegations

16 in the pleadings are true, the defendant is entitled to judgment as a matter of law. *Westlands*

17 *Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). If there is a material dispute in

18 the parties' pleadings, a motion for judgment on the pleadings cannot be granted.

19        Although Rule 12(c) does not mention leave to amend, courts have discretion to grant a

20 Rule 12(c) motion with leave to amend. *Silas v. Argent Mortg. Co., LLC*, 2017 WL 6055842, *4

21 (E.D. Cal. Dec. 7, 2017) (citing *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396,

22 1401 (N.D. Cal. 1997)). Leave to amend should be granted unless amendment would be futile,

23 the party seeking amendment acted in bad faith or unduly delayed, or such amendment would

24 unfairly prejudice the opposing party. *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).

25                    **IV. Discussion**

26 **A. Incorporation by Reference of the CBA**

27        As a threshold matter, the parties dispute whether Plaintiff's reference to the CBA in the

28 CBA in the First Amended Complaint and attachment of the CBA to the First Amended

Complaint are sufficient to incorporate the entirety of the CBA into the complaint such that the Court can consider the CBA in resolving the present motion. Plaintiff argues that he "attached the CBA to support the discreet allegation of fact that workers at [Leprino's] Lemoore East plant worked pursuant to a CBA…." Doc. 19 at 6. Otherwise, "[t]he CBA is neither referenced nor relied upon."

In considering a motion for judgment on the pleadings a district court may "consider materials that are submitted with and attached to the [c]omplaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 998-999 (9th Cir. 2011); *accord Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The CBA is a document that was attached to the FAC.

Plaintiff relies on *Saunders v. Knight*, 2006 WL 224426, *4 (E.D. Cal. Jan. 25, 2006), for the proposition that "documents … attached as exhibits to [a] complaint" which were not "relied upon by plaintiff as a necessary part of her claim" did not bind the plaintiff to that position. Doc. 19 at 6. Plaintiff's reliance on *Saunders* is inapposite. In *Saunders*, the plaintiff attached to her complaint a transcribed statement by the defendant that the plaintiff alleged to be inaccurate. *Saunders*, 2006 WL 224426 at *4. That court, very reasonably, rejected the defendant's attempt to treat the content of transcribed statement as an admission attributable to the plaintiff. *Saunders*, 2006 WL 224426 at *4. Here, Plaintiff contends that he and the putative class members worked pursuant to the CBA between Teamsters and Leprino. The parties are in agreement that the attached CBA is authentic.

The CBA is appropriately considered in resolving Leprino's motion for judgment on the pleadings.[3]

///

///

---

[3] For the sake of clarity, the Court does not assume that wages were *actually* paid at the rates listed in the CBA, that meal breaks were *actually* afforded in the manner set out in the CBA, or that the putative class members were *actually* compensated for donning and doffing sanitary gear as required by the CBA. Plaintiff does not allege that was the case and the CBA does not so indicate.

**B. Plaintiff's First and Second Causes of Action – Failure to Pay Minimum Wage and Failure to Pay All Wages Due**

Plaintiff contends that Leprino failed to Plaintiff and putative class members for all hours worked and therefore also failed to pay the minimum wage for all hours worked in violation of the California Labor Code. Cal. Lab. Code §§ 204, 510, 1194, 1197. Leprino initially argued that, because the CBA indicates that it paid its employees at least $12.99 per hour, it did not fail to pay less than the minimum wage. Doc 17 at 10. However, that argument is not responsive to Plaintiff's theory—that Leprino failed to pay wages to Plaintiff and putative class members for various pre and post-shift activities, including donning and doffing sanitary gear, walking to production lines, waiting in line to sanitize, and waiting for sanitary gear or supplies. FAC at ¶ 5. If Defendants failed entirely to pay any wages for the time Plaintiff and the putative class members spent on the above-mentioned activities, they also failed to pay the minimum wage for all hours worked.

It is agreed between the parties, and it is well established under California law, that an employer must compensate employees for all "hours worked." Cal. Code. Regs. tit. 8 § 11080(2)(G); *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 523 (E.D. Cal. 2014); *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1083 (N.D. Cal. 2007); *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1051-1052 (2012); *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 585 (2000). "Hours worked are defined as 'the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.'" *Arredondo*, 301 F.R.D. at 523 (quoting *Morillion*, 22 Cal.4th 575); *accord* Cal. Code. Regs. tit. 8 § 11080(2)(G). Under California law, hours worked includes any on-site pre or post-shift activities required by the employer. *See, e.g.*, *Morillion*, 22 Cal.4th at 587 ("[A]n employer [that] requires employees to meet at designated places to take its buses to work and prohibits them from taking their own transportation" subjects employees to "the control of [the] employer" and the time spent traveling on the buses "is compensable as 'hours worked.'"); *Ridgeway v. Wal-Mart Stores, Inc.*, 107 F.Supp.3d 1044, 1054-1055 (N.D. Cal. 2015) (holding that an employer requires an employee to remain onsite—even though the

6

1    employees were permitted to relax or take meals—exercises control and the time is compensable

2    as hours worked.) *See also, IPB, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005) (holding that donning

3    and doffing of specialized gear performed before or after a shift is "integral and indispensable"

4    to the employee's principal activities thus compensable under the Fair Labor Standards Act

5    ("FLSA")); *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 323-324 (Cal. Ct. App. 2005) ("A

6    review of [California's] labor statutes reveals a clear legislative intent to protect the minimum

7    wage right of California employees to a greater extent than federally.")

8         The pre and post-shift activities that Plaintiff alleges are appropriately classified as

9    "hours worked" under California law. Plaintiff alleges that he and the putative class members

10   were not paid minimum wage for those hours worked.

11        In response, Defendants highlight the portion of the CBA that requires employees to be

12   "paid a total of 14 minutes of additional compensation for donning and doffing at the straight

13   time rate for each shift worked." CBA at 14. Defendants explain that the CBA shows that they

14   did pay compensate for donning and doffing time at an hourly rate above the minimum wage.

15   However, the Court does not accept as true that Leprino actually paid Plaintiff and the putative

16   class members an amount exceeding minimum wage for the time actually spend donning and

17   doffing.[4] Indeed, Plaintiff alleges that "at the beginning of each work day, prior to the start of

18   paid time, Plaintiff and the [putative] [c]lass [m]embers spen[t] substantial amounts of time, for

19   which they [were] not compensated, engaged in mandatory" donning and doffing activities and

20   sanitary procedures. FAC at ¶¶ 20-21.

21        Plaintiff goes on to highlight that the CBA continues on to explain that "[t]his

22   compensated time is not considered hours worked." CBA at 14.[5] Plaintiff appears to suggest that

23   the fourteen minutes of additional compensation paid by Leprino for donning and doffing is not

24   considered "hours worked" for purposes of the California Labor Code because the CBA

25

26   [4] In other words, even though the CBA requires Defendants to pay fourteen minutes of compensation, Plaintiff
     alleges that he and the putative class members were not paid for the hours worked donning and doffing. Plaintiff's
27   allegations tend to show a violation of the CBA and the Labor Code.
     [5] The clear purpose of classifying the compensation for donning and doffing time as something other than hours
28   worked is to avoid payment of overtime wages if the required donning and doffing causes employees to work more
     than eight hours in a day or forty hours in a week.

1  indicates that the "compensated time is not considered hours worked." The Court rejects that

2  position. If, as the CBA requires, the putative class members were compensated for fourteen

3  minutes worth of time for donning and doffing, Plaintiff and the putative class members could

4  not recover for failure to pay the minimum wage for that fourteen minutes. *See Melchor v. Foster*

5  *Poultry Farms Inc.*, 2012 WL 1836289, *5-6 (E.D. Cal. May 21, 2012). If, however, Plaintiff

6  and the putative class members regularly spend more than fourteen minutes donning and doffing

7  sanitary gear, they could recover for underpayment of that time. *Id.* Plaintiff's allegations do not

8  support one theory clearly over the other. Plaintiff has alleged facts that, if true, could just as

9  easily support liability as an absence of liability. For that reason, insofar as Plaintiff's first claim

10 is premised upon failure to pay wages for donning and doffing, it must be dismissed and

11 Defendants' motion granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-561 (2007).

12 Because the Court has recognized that Plaintiff's claim might not be futile, amendment will be

13 permitted.

14       Also significant, the CBA does not address the other alleged uncompensated pre and

15 post-shift activities; Defendants have identified no part of the CBA that discusses walking to

16 production lines, waiting in line to sanitize, or waiting for sanitary gear or supplies. Defendants

17 have advanced no argument that challenges Plaintiff's claim for off-the-clock walking to

18 production lines after donning and doffing, waiting in line to sanitize, or waiting for sanitary gear

19 or supplies. That portion of the cause of action survives and Defendants' motion to is denied as

20 to it.

21 **C. Plaintiff's Third Cause of Action – Failure to Pay Overtime Wages**

22       Generally, California Labor Code Section 510 requires an employer to pay a non-exempt

23 employee overtime for any work in excess of eight hours in one workday or forty hours in one

24 workweek. Cal. Labor Code § 510(a); Cal. Code Regs. tit. 8 § 11080(3)(A)(1). Leprino contends

25 that Plaintiff and the putative class members are exempted from the general overtime rules.

26 California Labor Code Section 514 provides that Section 510 does "not apply to an employee

27 covered by a valid collective bargaining agreement if the agreement expressly provides for the

28 wages, hours of work, and working conditions of the employees, and if the agreement provides

8

premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Labor Code § 514.

Plaintiff points out that Section 514 exempts employees from the reach of Section 510 only when the valid collective bargaining agreement provides "premium wage rates for *all* overtime hours worked…." Doc. 19 at 9. Plaintiff argues that by defining time spent donning and doffing sanitary gear as something other than "hours worked," the CBA does not provide a premium wage rate for *all* overtime hours worked for purposes of the California Labor Code. Doc. 19 at 9. Plaintiff argues that "[t]o conclude otherwise would allow unionized employers to avoid overtime by unilaterally choosing what activities it will and will not count as hours worked." Although Plaintiff's position ignores the role that a labor union has in negotiating a CBA—an employer of unionized employees can take no unilateral action impacting the pay or conditions of employment of those employees—Plaintiff's position is not without merit. The California Labor Code only provides an exemption to payment of overtime pursuant to Section 510 if a premium wage is paid for all overtime hours worked. *See Gregory v. SCIE, LLC*, 317 F.3d 1050, 1053 (9th Cir. 2003); *Guillen v. SEIU United Service Workers West*, 2017 WL 6372815, *3 (N.D. Cal. Dec. 13, 2017). That limitation would be largely undermined if the parties to a CBA could exclude activities that are integral to performance of the principal work activity from consideration as "hours worked" for purposes of calculating overtime compensation. On the face of the CBA, it is clear that it does not require Leprino to pay a premium rate for all overtime hours worked, to wit donning and doffing time is not counted as hours worked for purposes of overtime calculation. Based on the allegations before the Court, Section 514 does not exempt Plaintiff or the putative class from the reach of the overtime requirements of Section 510(a).

Defendants' motion to for judgment on the pleadings as to Plaintiff's third cause of action will be denied.[6]

---

[6] Defendants' motion for judgment on the pleadings presented no Labor Management Relations Act preemption issues, *see* 29 U.S.C. § 185; *Kobold v. Good Samaritan Reg. Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016), and the Court does not address any such issues *sua sponte*. This order should not be read to weigh in on that issue.

**D. Plaintiff's Eighth Cause of Action – Conversion**

Plaintiff alleges that Leprino "wrongfully withheld earned wages and other monies" from Plaintiff and the putative class. "In particular, [Leprino] failed to pay … all wages [] earned pursuant to the applicable [e]mployment [l]aws and [r]egulations." FAC at ¶ 21. Presumably, Plaintiff's allegation is designed to encompass Leprino's alleged withholding of wages for all hours worked, overtime wages, and premium wages for denied meal periods.

Not all of those wages are recoverable in an action for conversion. "Under California law, when the Legislature creates a right that did not exist at common law and provides a comprehensive remedial scheme for that right, the statutory remedies are exclusive." *Jones v. AB Acquisition, LLC*, ---Fed.Appx. ----, 2017 WL 5562459, *1 (9th Cir. Nov. 20, 2017) (citing *Orloff v. Los Angeles Turf Club*, 30 Cal.2d 110, 180 P.2d 321, 322 (1947)). "The common law in California did not recognize a right to overtime compensation 'absent an express contract to that effect.'" *Jones*, 2017 WL 5562459 at *1 (quoting *Aubry v. Goldhor*, 201 Cal. App. 3d 399, 404 (1988)). The Labor Code established that right. *Jones*, 2017 WL 5562459 at *1. As a result, Plaintiff's conversion claim is precluded insofar as it seeks to recovery overtime wages. That portion of Plaintiff's eighth cause of action will be dismissed without leave to amend.

Insofar as meal period premiums are wages, a question that the Court does not now weigh in on, they did not exist at common law and no remedy for their recovery existed at common law. *Thomas v. Home Depot USA Inc.*, 527 F.Supp.2d 1003, 1010 (N.D. Cal. 2007); *accord Boyd v. Autozone, Inc.*, 2011 WL 13153245 (N.D. Cal. Mar. 28, 2011). The Labor Code established that right. As a result, Plaintiff's conversion claim is precluded insofar as it seeks to recover meal period premium wages. That portion of Plaintiff's eighth cause of action will be dismissed without leave to amend.

A claim for recovery of unpaid wages existed at common law. *Alvarenga v. Carlson Wagonlit Travel, Inc.*, 2016 WL 466132, *4-5 (E.D. Cal. Feb. 8, 2016). "Although the California Labor Code creates a comprehensive and detailed remedial scheme …, because the Labor Code" sections governing payment of wages are not expressly exclusive, and because the right existed at common law, "the remedies provided by the Labor Code [for non-payment of wages]

supplement, rather than supplant, the common law remedies." *Alvarenga*, 2016 WL 466132 at *4; *Dittmar v. Costco Wholesale Corp.*, 2016 WL 3387464, *2 (S.D. Cal. June 20, 2016); *Sims v. AT&T Mobility Servs. LLC*, 995 F.Supp.2d 1110, 1120 (E.D. Cal. 2013); *contra Lopez v. Aerotek, Inc.*, 2015 WL 4504691, *3 (C.D. Cal. 2015) ("[E]mployees cannot bring a claim for conversion based on a defendant's failure to pay wages under the Labor Code because the Labor code provides an extensive and exclusive remedial scheme."); *Green v. Party City Corp.*, 2002 WL 553219 (C.D. Cal. Apr. 9, 2002); *Voris v. Lampert*, 2017 WL 1153334, *6-7 (Cal. Ct. App. Mar. 28, 2017) (unpub.) (rejecting viability of claim for conversion of unpaid wages). Plaintiff's claim for conversion is not precluded insofar as it seeks to recover unpaid wages.

Defendants further contend that Plaintiff's claim fails because the Plaintiff and putative class members did not allege that they held "title to the wages allegedly converted" or that the alleged wages were "a specific sum capable of identification." Doc. 17 at 13 (citing, *inter alia*, *Moore v. Regents of University of California*, 51 Cal.3d 120, 136 (1990)). In *Alvarenga* this Court rejected the argument that an employee does not hold title to earned but unpaid wages. *Alvarenga*, 2017 WL 466132 at *4-5. Defendants' argument does not persuade the Court that its prior decision was in error.[7]

Next, the Court agrees with Defendants' characterization of the requirement that the allegedly converted sum must be a "specific sum" that is "capable of identification." *See Alvarenga*, 2017 WL 466132 at *4-5 (citation omitted); *see PCO, Inc. v. Christensen, Miller, Fink Jacobs, Glaser, Weil & Shapiro, LLC*, 150 Cal.App.4th 384, 396-397 (Cal. Ct. App. 2007) . Plaintiff's answer is that California law requires employers to keep records of all hours worked by employees, therefore all that would be required to identify the sum owed is to calculate the number of hours worked multiplied by the applicable hourly rate. Doc. 19 at 10; *see* FAC at ¶ 98 ("The amount of property … wrongfully converted is capable of being ascertained using Defendants' own records and other data.") The most evident problem with Plaintiff's theory is that it fails to recognize that at least some of the "off-the-clock" hours were not recorded. *See*

---

[7] Moreover, because Plaintiff fails to identify a specific sum capable of identification, the Court need not revisit whether a claim for conversion of wages can ever be cognizable.

1   FAC at ¶ 7 ("After putting on their required equipment, workers then punch in for their required

2   shift, roughly 5 minutes before paid work time begins in order to allow them time to walk to

3   their respective work areas."); FAC at ¶ 8 ("[A] worker whose shift starts at 6 a.m., is not paid

4   for all time prior to 6 a.m. spent from the time they arrive at their clean lockers and subsequent

5   time spent at personal lockers, waiting in lines at lockers and to punch in. This illegal practice

6   calls into question the reliability of Leprino's time keeping data….") Plaintiff does not seek a

7   definite sum that is readily identifiable. For instance, Plaintiff does not allege that each wage

8   statement indicates the number of hours worked without pay.

9       In order to plead a cause of action, Plaintiff must "specifically allege the basis for their

10  claim and how a specific sum that was allegedly converted could be ascertained." *Khan v. K2*

11  *Pure Solutions, L.P.*, 2013 WL 6503345, *9 (N.D. Cal. Dec. 4, 2013). In light of the likely

12  absence of any identifiable specific sum converted, this claim will be dismissed.  A claim that

13  Defendants, over time, failed to pay Plaintiff an incalculable amount of wages—regardless of

14  why the amount is incalculable—will not suffice.

15      The Court cannot now determine that it would be futile to permit amendment. However,

16  if any amended complaint does not cure the defect identified herein, Plaintiff's conversion claim

17  will be dismissed without further leave to amend.

18  ///

19  ///

20  ///

21

22

23

24

25

26

27

28

1

**V. Order**

2          Based on the foregoing, IT IS HEREBY ORDERED that Defendants' motion for

3    judgment on the pleadings is GRANTED in part and DENIED in part as follows:

4       1.   Defendants' motion is GRANTED as to Plaintiff's First and Second Causes of Action

5             insofar as they are premised upon non-payment of wages for donning and doffing;

6       2.   Defendants' motion is DENIED as to Plaintiff's First and Second Causes of Action

7             insofar as they are premised upon other unpaid, off-the-clock work;

8       3.   Defendants' motion is DENIED as to Plaintiff's Third Cause of Action;

9       4.   Defendants' motion is GRANTED as to Plaintiff's Eighth Cause of Action.

10   Leave to amend is GRANTED as to Plaintiff's First Cause of Action. Leave to amend is

11   GRANTED as to Plaintiff's Eighth Cause of Action except as set forth above. Any amended

12   complaint must be filed within twenty-one days of the date of this Order.

13

14   IT IS SO ORDERED.

15   Dated:   December 20, 2017

                                              SENIOR  DISTRICT  JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28