| | |
|---|---|
| **JOHN PEREZ and on behalf of all other similarly situated individuals,**<br><br>Plaintiff,<br><br>**LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1-50, inclusive,**<br><br>Defendants. | **CASE NO. 1:17-CV-00686-AWI-BAM**<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>(Doc. 26) |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

**I. Introduction**

On April 13, 2017, Plaintiff John Perez ("Plaintiff") filed the instant wage and hour class action on behalf of himself and other similarly situated non-exempt, hourly unionized employees at the cheese processing plant operated by Defendants Leprino Foods Company and Leprino Foods Dairy Products Company (collectively "Leprino" or "Defendants") in East Lemoore, California (the "East Lemoore Plant"). Leprino removed the action to this Court on May 18, 2017. This Court granted Leprino's motion for judgment on the pleadings as to Plaintiff's first, second, and eighth causes of action for failure to pay minimum wages, failure to pay all wages due, and conversion, respectively. Doc. 24 at 6-8, 10-13. Leave to amend was granted, with express limitations. Doc. 24 at 13. Plaintiff filed an amended complaint, realleging the dismissed

causes of action, within the time permitted. Second Amended Complaint, Doc. 25 ("SAC"). Leprino now moves to dismiss Plaintiff's third and eighth causes of action for failure to pay overtime wages and conversion. Doc. 26. Leprino further moves for an order striking Plaintiff's prayer for injunctive relief, contending that Plaintiff lacks standing to seek that relief. Plaintiff has filed no opposition. Defendant has filed no reply.

For the following reasons, the Leprino's motion will be granted.

## II. Background

A. Allegations of the Complaint

Plaintiff and the putative class members are all "non-exempt, hourly employees, who work pursuant to a Collective Bargaining Agreement ("CBA") between Leprino and the Teamsters Union." SAC at ¶ 4. Plaintiff attached the CBA to his second amended complaint. SAC at ¶ 4; Docs. 10-1, 25-1 ("CBA").

The central factual allegation underlying Plaintiff's action is that Leprino has a practice of requiring Plaintiff and the putative class members to "work substantial amounts of time without pay." SAC at ¶ 3. Specifically, Leprino does not "pay Plaintiff and [the putative] [c]lass [m]embers for all required pre- and post-shift work activities that are necessary and integral to their overall employment responsibilities, such as: donning and doffing required sanitary gear [], walking to production lines, waiting in line to sanitize, and waiting for [sanitary gear] and/or supplies." SAC at ¶ 5. Plaintiff details the ordinary pre-shift activities of putative class members: When employees arrive at Lemoore East plant the must "first report to a 'clean locker' to be issued clean work shirts and trousers for the day…. From their clean lockers, workers must next walk over to their personnel lockers where they keep tools and required [person protective equipment], such as … work boots and helmets. At their personnel lockers[,] workers changed out of their street clothes and into their sanitary work equipment. After putting on their required equipment, workers then punch in for their required shift, roughly 5 minutes before paid work time begins in order to allow them time to walk to their respective work areas." SAC at ¶ 7. "Workers are not paid for all the time spent donning and doffing…." SAC at ¶ 7.

Next, Plaintiff sets forth allegations regarding three of Leprino's meal and rest break

2

policies. First, Plaintiff and putative class members were "required to remain on call during meal and rest breaks and to respond to communications from supervisory personnel. Plaintiff and [putative] [c]lass members are either required to carry a radio in order to communicate with supervisory personnel concerning work issues during meal and rest breaks, and/or are required to respond to calls over the intercom during meal and rest breaks, including returning to the production floor prior to the conclusion of their meal and rest breaks." SAC at ¶ 10. This policy applied to all putative class members. SAC at ¶ 10. Plaintiff alleges a second meal break policy that applied to "many, though not all," putative class members—employees were "provided with … paid, on duty meal breaks and thus were kept on duty during their 30 minute meal breaks." SAC at ¶ 11. Finally, Plaintiff alleges a third meal break policy applicable to employees who "worked … shifts in excess of ten hours." SAC at ¶ 12. Those employees "were not afforded a second off-duty 30-minute meal period…. [R]ather, they were [nominally] afforded a third rest break." SAC at ¶ 12. However, during the third rest break, employees were required "to remain on duty and answer questions from the production floor." SAC at ¶ 12.

B. The Collective Bargaining Agreement[1]

The CBA between Leprino and Teamsters Local #517 ("Teamsters") is operative between January 1, 2014 and December 31, 2018. The CBA is comprehensive; it covers topics including hours of work, holidays, wage rates, meal periods, rest periods, sick leave, vacation, and retirement, to name a few. *See* CBA at 2. Leprino emphasizes the following sections of the CBA:

1. The lowest hourly wage rate for any employee provided for in the CBA is $12.99. CBA at 13, 43.
2. "Employees who are required to change into and out of uniforms will … be paid a total of 14 minutes of additional compensation for donning and doffing at the straight time rate for each shift worked. This compensated time is not considered hours worked." CBA at 14.

---

[1] In its order on Defendants' motion for judgment on the pleadings, this Court held that CBA, attached by Plaintiff to the FAC (and now to the SAC) was appropriately considered in resolving that motion. Doc. 24 at 4-5. The same remains true here.

3. "Time and one-half (1 ½) will be paid for all hours worked above eight (8) hours within nine and one-half (9 ½) consecutive hours in any one (1) day, or forty (40) hours in any one (1) week, whichever is greater…." CBA at 4.

Leprino also emphasizes that the CBA contains a five-step process for resolving grievances, culminating in arbitration. CBA at 29-31.

### III. Legal Standard

A. Proper procedural device for challenging a demand for injunctive relief.

Leprino moves to strike Plaintiff's demand for injunctive relief on the ground that Plaintiff is no longer an employed by Defendants and, as such, he lacks Article III standing. Doc. 26 at 3, 17-18.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. Rule Civ. Proc. 12(f). The Ninth Circuit has stated that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010). District courts in this Circuit have extended *Whittlestone* to include the general proposition that no a prayer for injunctive relief (and any prayer for relief, generally) is appropriately stricken pursuant to Rule 12(f). *Stromberg v. Ocwen Loan Serv'g, LLC*, 2017 WL 2686540, *12 (N.D. Cal. June 22, 2017) (prayer for injunctive relief is not appropriately stricken pursuant to Rule 12(f)); *Grayson v. Cty. Of Marin*, 2015 WL 720830, *2 (N.D. Cal. Feb. 18, 2015) (same); *McGuire v. Recontrust Co.*, 2013 WL 5883782, *3 (E.D. Cal. Oct. 30, 2013) (same); *see Oushana v. Lowe's Co. Inc.*, 2017 WL 5070271, *2 (E.D. Cal. Nov. 3, 2017) (punitive damages); *First Nat. Ins. Co. of Am. v. Peralta Cmty. Coll. Dist.*, 2013 WL 622944, *8 (N.D. Cal. Feb. 15, 2013) (attorney fees). Instead, arguments that a claim is inadequately pled or cannot be granted as a matter of law are appropriately resolved pursuant to a Rule 12(b)(6) motion or a Rule 56 motion. *Whittlestone*, 618 F.3d at 974.

"[W]here a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion." *Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020–21

(N.D. Cal. 2009). The motion to strike injunctive relief will be considered as though it was properly brought as a Rule 12(b)(6) motion.

B. Legal standard for motion to dismiss for failure to state a claim.

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), "allegations that contradict matters properly subject to judicial notice," or material attached to or incorporated by reference into the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents incorporated by reference, or by judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Leave to amend should be granted unless amendment would be futile, the party seeking amendment acted in bad faith or unduly delayed, or such amendment would unfairly prejudice the opposing party. *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).

**IV. Discussion**

A. Plaintiff's Third Cause of Action: Failure to Pay Overtime Wages

As explained in the Court's prior order, generally, California Labor Code Section 510 requires an employer to pay a non-exempt employee overtime for any work in excess of eight hours in one workday or forty hours in one workweek. Cal. Labor Code § 510(a); Cal. Code Regs. tit. 8 § 11080(3)(A)(1). However, as also explained, California Labor Code Section 514

provides that Section 510 does "not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wages for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Labor Code § 514. Leprino now contends that the overtime claims alleged in favor of Plaintiff and the putative class members are "preempted by [the Labor Management Relations Act ("LMRA"),] Section 301 and must be dismissed. Doc. 26 at 11; *see* 29 U.S.C. § 185(a).

Section 301 is "construed [ ] broadly to cover most state-law actions that require interpretation of labor agreements." *Builders & Contractors v. Local 302*, 109 F.3d 1353, 1356 (9th Cir. 1997); *accord Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for So. Cal*, 463 U.S. 1, 23 (1983) ("The preemptive force of [Section] 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [Section] 301.") However, "not every dispute concerning employment, or tangentially involving a provision of a [CBA], is preempted by [Section] 301." *Kobold v. Good Samaritan Regional Medical Center*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Allis-Chalmers Corp. v. Lueck*, 481 U.S. 202, 209 (1985)). The Ninth Circuit has set out a two-step inquiry to analyze Section 301 preemption of state law claims:

> First, a court must determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there. [] If the court determines that the right underlying the plaintiff's state law claim(s) exists independently of the CBA, it moves to the second step, asking whether the right is nevertheless substantially dependent on analysis of a collective-bargaining agreement. [] Where there is such substantial dependence, the state law claim is preempted by [Section] 301.[fn] If there is not, then the claim can proceed under state law.

*Kobold*, 832 F.3d at 1032-1033 (internal citation and quotation marks omitted). Leprino argues in the alternative that (1) that the right to overtime compensation sought by Plaintiff exists only

6

as a result of the CBA because California Labor Code Section 514 creates an exception, applicable in this case, to the overtime pay requirements of California Labor Code Section 510 any time a valid CBA exists that includes pay for "overtime" hours, as defined by the CBA rather than Section 510, and (2) even if a state law right to overtime compensation exists in this situation, whether that obligation was appropriately complied with requires interpretation of the CBA's overtime provisions. Doc. 26 at 12-15. The Court need only address Leprino's first argument. In resolving Leprino's first argument, the Court must revisit the decision to deny Leprino's motion for judgment on the pleadings as to Plaintiff's overtime claim. *See* Doc. 20 at 9.

As to the first argument, Leprino relies upon *Vranish v. Exxon Mobil Corp.*, 223 Cal.App.4th 103, 109-111 (Cal. Ct. App. 2014), for the proposition that California Labor Code Section 514 renders Section 510 inapplicable when a CBA provides for, *inter alia*,[2] payment of overtime hours worked as defined by the CBA, even if the CBA defines overtime differently than does Section 510. *Vranish* does stand for that proposition. *Id*. ("Nothing in [S]ection 514 requires [the employer] to look to the definition of 'overtime' as that word is defined in [S]ection 510."); *accord Sperry v. Securitas Security Services, USA, Inc.*, 2014 WL 1664916, *5 (N.D. Cal. Apr. 25, 2014); *Kilbourne v. Coca-Cola Company*, 2014 WL 11397891, *6-7 (S.D. Cal July 14, 2014) ("[S]ection 510 does not determine when Plaintiff works 'overtime hours' and is thus entitled to overtime compensation. Instead, the CBAs do."); *see also Araquistain v. PG&E Co.*, 229 Cal.App.4th 227, 235-237 (Cal.Ct.App. 2014) (expanding on *Vranish* to explain that labor unions are also free to set the terms of meal periods, including the length and whether employees are relieved of duty in a manner that provides lesser protection than the California Labor Code would in other circumstances).[3] Despite the Court's prior order, Leprino is correct that the CBA

---

[2] In addition to the payment of overtime requirement, as noted above, Section 514 requires the CBA to provide for the wages, hours of work, and working conditions of the employees and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. The only disputed question is whether the CBA provides for payment of all overtime hours worked.

[3] Leprino's present argument was not presented to the Court in its motion for judgment as a matter of law. Instead, the Court relied upon *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1053 (9th Cir. 2003), for the proposition that Section 514 required a CBA to pay overtime hours worked as defined by Section 510. In the face of *Vranish*, it is clear that this Court's prior order in reliance on *Gregory* regarding a question of California law cannot stand.

in this action meets the requirements of Section 514 for exclusion from the grasp of Section 510: it provides for (1) wages, hours of work, and working conditions of the putative class members, (2) a premium wage for all overtime worked (as appropriately defined by the CBA), and (3) provides a regular hourly rate of at least 30% more than the state minimum wage. The overtime requirements of Section 510 do not apply to the putative class members. As a result, Plaintiff's Section 510 claim fails and any right to overtime compensation can arise only from the CBA.

Plaintiff's third cause of action will therefore be dismissed without leave to amend.

B. Plaintiff's Eighth Cause of Action: Conversion

The Court previously dismissed Plaintiff's eighth cause of action with leave to amend. Doc. 20 at 10-12. Plaintiff's theory of recovery was that putative class members were not paid for "off-the-clock," and unrecorded, hours worked. *Id*. at 11 The Court explained that Plaintiff failed to allege that a specific sum, capable of identification, had been converted. *Id*. As this Court explained in *Alvarenga v. Carlson Wagonlit Travel, Inc.*, 2016 WL 466132, *4-5 (E.D. Cal. Feb. 8, 2016) , such situations include situations "such as where an agent accepts a sum of money to be paid to another and fails to make the payment…, where a check is wrongfully taken from another's desk…, where a defendant wrongfully uses a credit card to transfer recorded sums of money to that defendant's account…, where a plaintiff alleges entitlement to all of the funds in a particular account…, or where a defendant stole bonuses related to the sale of specific automobiles." 2016 WL 466132 at *4 (citations omitted); *see Vahora v. Masood*, 2017 WL 1213424, *20 (E.D. Cal. Apr. 3, 2017) (allowing a conversion claim regarding a specific percentage of a partnership's assets and profits, which were "definite, recordable amounts.") The Court required Plaintiff to "specifically allege the basis for [his] claim and how a specific sum that was allegedly converted could be ascertained…." *Id*. The Court warned that "a claim that Defendants, over time, failed to pay Plaintiff an incalculable amount of wages—regardless of why the amount is incalculable—will not suffice." *Id*. Plaintiff's second amended complaint includes the following language response to the Court's requirement:

> The amounts converted is capable of being ascertained by (1) reference to or conduct of time studies stating the time unpaid by Defendants (thus permitting

    calculation of the amount unpaid), (2) testimony of Plaintiff, the putative class members and other witnesses, including Defendants' employees and officers, related to the time unpaid by Defendants, (3) surveys of putative class members, and (4) Defendants' documents on time studies and video of the plant showing the duration of unpaid work activities.

SAC at ¶ 98. Otherwise, Plaintiff's conversion cause of action is identical. Defendants contend that Plaintiff's conversion claim fails because he cannot articulate a converted sum capable of identification and insofar as it is premised upon failure to pay overtime wages and meal period premiums. The Court only addresses Defendants' first argument

    Plaintiff's allegations make clear that precise calculation of a specific sum of money owed is not possible. Plaintiff, in sum, acknowledges that no records exist from which exact calculation of a sum converted can be drawn. All of Plaintiff's proposals suggest a need to recreate records that would permit an approximation of a sum owed. Because no precise sum capable of being ascertained is alleged, Plaintiff's eighth cause of action for conversation is not cognizable and must be dismissed without leave to amend.

C. Plaintiff's Demand for Injunctive Relief

    Leprino moves to dismiss Plaintiff's demand for injunctive relief—compelling a change in Leprino's future employment practices—because, as a non-employee of Leprino, Plaintiff lacks standing to seek such relief. The Court agrees. "[I]t is well-settled that former employees lack standing to seek injunctive relief to ensure their former employer's compliance with" the California Labor Code. *Mie Yang v. Francesca's Collections, Inc.*, 2018 WL 984637, *8 (N.D. Cal. Feb. 20, 2018) (citing, *inter alia*, *Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1143 n.7 (Cal. Ct. App. 2011)); *Stearne v. Heartland Payment Systems, LLC.*, 2018 WL 746492, *2 (E.D. Cal. Feb. 6, 2018); *Aldapa v. Fowler Packing Co., Inc.*, --- F.R.D. ----, 2018 WL 534039, *7 (E.D. Cal. Jan. 24, 2018) (holding that a former employee cannot seek injunctive relief on behalf of a putative class of present employees); *Byrd v. Masonite Corp.*, 2015 F.Supp.3d 859, 865 (C.D. Cal. 2016) ("Former employees lack standing to bring a claim for injunctive relief against their employers because such employees do not stand to benefit from the injunction"). Accordingly, Plaintiff's demand for injunctive relief will be dismissed for lack of standing.

///

**V. Order**

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED:

1. Plaintiff's Third Cause of Action is DISMISSED without leave to amend;
2. Plaintiff's Eighth Cause of Action is DISMISSED without leave to amend;
3. Plaintiff's demand for injunctive relief is DISMISSED without leave to amend.

This matter proceeds forward on the remaining claims of the Second Amended Complaint.

IT IS SO ORDERED.

Dated: __March 22, 2018__ _____
SENIOR DISTRICT JUDGE